| | |
|---|---|
| Roger Durand, Linda Durand, and Priscilla Durand, | Court File No.: 15-cv-02102 (RHK/SER) |
| Plaintiffs, | **AMENDED MOTION TO EXCLUDE** |
| vs. | **PORTIONS OF EXPERT TESTIMONY** |
| Fairview Health Services, | |
| Defendant. | |

## INTRODUCTION

Defendant Fairview Health Services ("Defendant") failed to provide effective communication access for deaf Plaintiffs Roger and Linda Durand during the hospitalization and unfortunate passing of their late son, Shaun Durand. Roger and Linda use sign language for communication. Defendant often did not provide sign language interpreters and instead, relied on Plaintiff Priscilla Durand, the daughter of Roger and Linda, to interpret several significant and crucial communications from Shaun's healthcare providers to Roger and Linda over the two-day period before Shaun's death.  Plaintiffs claim Defendant's actions and failures to act were violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, the Rehabilitation Act, 29 U.S.C. § 794, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.11.

Defendant hired Anna Witter-Merithew, M.Ed. ("Witter-Merithew") and John McGinty, Jr., FACHE, ("McGinty") as expert witnesses in this matter; Witter-Merithew as a rebuttal expert to Plaintiffs' expert, Dr. Judy Shepard-Kegl, Ph.D., and McGinty to

support Defendant's position that it did not violate federal and state anti-discrimination laws.

Plaintiffs object to several of Witter-Merithew's conclusions and respectfully move the Court to exclude such testimony because it: (1) evaluates the weight and sufficiency of evidence, and therefore usurps the fact-finding and credibility functions of the jury; (2) is comprised of inadmissible legal conclusions reserved for this Court's determination; (3) is not based on any valid methodology or scientific reasoning, and therefore does not meet the requisite level of reliability for expert testimony; and (4) is not based on any scientific, technical, or other specialized knowledge, and/or is not relevant to the issues at trial .

Additionally, Plaintiffs object to McGinty's proffered testimony and respectfully move the Court to exclude the entirety of McGinty's report and testimony because: (1) McGinty's conclusions that Defendant's conduct fell within the legal standards are impermissible legal conclusions that answers the ultimate question in this case; and (2) McGinty's other conclusion that Defendant's hospital policies comply with national standards is irrelevant to the issues for trial.

Should the Court permit Witter-Merithew or McGinty to submit unreliable and irrelevant testimony, such testimony would confuse and mislead the jury, usurp the jury's role as fact-finder, and/or assume the Court's role in determining legal issues. Because such proffered testimony fails to meet the requirements of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), Plaintiffs respectfully move the Court to limit Witter-Merithew's testimony to only opine on the following issues: (1) Plaintiff Priscilla Durand's interpreting ability; (2) the process of interpreting; (3) the various

problems and ethical considerations that may arise when Children of Deaf Adults ("CODAs") interpret for their parents; and (4) the number and percentage of certified sign language interpreters nationwide. Plaintiffs also respectfully move the Court to exclude McGinty's testimony in its entirety.

## STATEMENT OF THE FACTS

### I. Factual Background of the Case

#### A. Plaintiffs' Background

Plaintiffs Roger and Linda Durand are deaf. (R. Durand Dep. 7:22–24; L. Durand Dep. 117:1–7.) The language in which Roger and Linda receive and express complex medical information is sign language. (Shepard-Kegl Dep. Ex. 3 at 2–3, 59, 79;[1] L. Durand Dep. 67:8–18.) Roger and Linda hold post-secondary education degrees and are cognitively and intellectually on par with hearing people. (Shepard-Kegl at 59, 77–78, 96–97.) To fully access information conveyed orally from healthcare providers, Roger and Linda require qualified sign language interpreters to communicate effectively. (*Id.*)

Roger and Linda's oldest child, Shaun Durand (age 30), died at Defendant's Ridges location in Burnsville, Minnesota on May 9, 2013 due to complications of Marfans Syndrome, a degenerative disorder of the bodily connective tissue. (L. Durand Dep. 115:23–116:2.) All of the Durand children, as well as Roger Durand, suffer from Marfans Syndrome. (*Id.* at 38:2–12.) Priscilla Durand, Roger and Linda's daughter, served as Shaun's healthcare agent during his hospitalization. (P. Durand Dep. 70:19–22.) Priscilla

---

[1] Plaintiffs hereinafter cite Shepard-Kegl's Expert Report, Shepard-Kegl Ex. 3, as "Shepard-Kegl" followed by the pincites.

is not deaf, is not proficient in sign language, and is not a trained medical interpreter. (*Id.* at 31:9–11, 32:5–9, 49:1–3; Shepard-Kegl 99–101; Witter-Merithew Dep. 53:9–11.) Priscilla was at the time and still remains an employee of a Fairview Clinic in Burnsville. (P. Durand Dep. 251:23–25.)

Shaun authorized Defendant to share his protected health information with his parents. (Klopp Dep. 116:11–16; P. Durand Dep. 139:23–140:25.) Priscilla, while acting as Shaun's healthcare agent, also authorized Defendant to share Shaun's protected health information with Roger and Linda. (P. Durand Dep. 163:23–164:8.) Defendant also acknowledged that Roger and Linda were stakeholders in the decision-making team for Shaun's final days. (Klopp Dep. 129:19–130:7, 180:18–181:8.)

## B. Defendant's Failure to Provide Auxiliary Aids and Services for Plaintiffs and Reliance On Family Member to Interpret

Defendant's new hire orientation training materials explicitly state Fairview staff have an affirmative duty to offer interpreters once they recognize a family member is deaf:

> **"If you recognize, or have any reason to believe that a patient, relative, close friend or companion is (D)deaf or HOH, you must advise the person that auxiliary aids and services will be provided free of charge."**

(Pennington Dep. Ex. 2 at 8.) The training materials also prohibit healthcare providers from relying on family members (or untrained Fairview employees) to interpret. (*Id.* 9).

Plaintiffs, as well as other family members on behalf of Roger and Linda, made several requests to Defendant to provide Roger and Linda with qualified sign language interpreters to communicate with Defendant's staff concerning complex medical information regarding Shaun's condition, medical care and treatment. (L. Durand 56:23–

57:2, 81:11–12; P. Durand Dep. 163:23–164:8, 198:1–15; David Durand Dep. 40:10–14, 40:22–41:16; Darlene Durand Dep. 54:10–19, 55:20–57:1; T. Durand Dep. 42:2–10, 45:21-25; Pauline Durand Dep. 66:14–67:8.) Defendant knew of Plaintiffs' need and request for interpreters before Roger and Linda even arrived to the hospital on May 8, 2013. (P. Durand Dep. 118:23–119:1; Klopp Dep. 43:15–21.)

In addition to these requests, Defendant knew Plaintiffs needed an interpreter as evidenced by (1) the testimony of some of its employees and agents, and (2) Defendant's provision of interpreters on two occasions. (P. Durand Dep. 192:25–194:25, 263:13–264:11; Klopp Dep. 117:6–118:7, 150:2–9; Lewis Dep. 58:1–59:5.) Furthermore, Defendant had notice of Plaintiffs' need *prior* to Shaun's hospitalization in May 2013 as evidenced by its provision of interpreters during Shaun's hospitalization at Defendant's University of Minnesota location in April. (L. Durand Dep. 49:19–50:4.)

Despite this, Defendant did not provide qualified sign language interpreters for many important communications between its staff and Roger and Linda concerning diagnosis, consults, updates, medical care, or treatment of Shaun while he was at Ridges Hospital. (*See*, Her Dep. 49:22–25, 72:14–73:13; Langston Dep. 102:1–10; Lewis Dep. 49:18–27; L. Durand Dep. 63:20–64:3; P. Durand Dep. 262:1–10.) Instead of ensuring sign language interpreters were present for Roger and Linda when healthcare providers appeared, Defendant ignored the presence of Roger and Linda in Shaun's room and communicated information to everyone else while relying on Priscilla to interpret for Shaun's deaf parents. (L. Durand 84:4–13; P. Durand Dep. 198:1–199:1.) Defendant only twice secured sign language interpreters for approximately fifteen minutes, on each

occasion *after* Roger and Linda had not had access to communcation during critical family meetings and interactions with healthcare providers. (P. Durand Dep. 192:25–194:25, 263:13–264:11.)

Defendant also failed to provide an equally accessible phone for Linda. When Shaun's health began to significantly decline during the evening of May 9, 2013, Linda rushed to contact Roger at work to summon him to the hospital before Shaun died. (L. Durand Dep. 112:12–113:6.) But when Linda asked a nurse for an accessible telecommunications device to urgently call her husband, the nurse refused to let her use it because Linda was not a patient. (Huitt Dep. 20:25–21:18.) After Linda frantically searched for a phone in other areas of the hospital, the nurse changed her mind, and brought Linda a TTY. (*Id.* 23:1–28:5.) However, the nurse did know now how to set it up and parts were missing. (*Id.* 29:1–33:19.) While Linda was attempting to dial-out to reach Roger, Shaun died. (L. Durand Dep. 115:23–116:2.) Because Defendant denied Linda an equally accessible telecommunications device, she could not reach Roger.  Roger endured receiving the news of his oldest son's death from the Burnsville Police in front of multiple co-workers instead of being present for Shaun's final moments. (L. Durand Dep. 115:23–116:11.)

## C. Defendant's Central Interpreting Office and Protocol for Arranging for Interpreters

Defendant maintains a central office in Minneapolis to schedule and arrange sign language interpreters for all seven of its hospital locations. (Kasal Dep. 103:10–104:5; Pennington Dep. 39:8–10, 49:18–50:10.)  Defendant employs full-time staff sign language

interpreters, on-call casual sign language interpreters, and contracts with multiple sign language agencies to secure interpreters for deaf patients, companions, and family members. (*See* Pennington Dep. 42:14–23, 89:25–15; Lynch Dep. 12:22–13:10, 14:6–15:4, 45:19–46:3, 54:7–9, 61:9–25, 67:10–19.) Central Interpreting sends interpreters for deaf patients, companions and family members once a request from the location is placed. If there is no request from the provider or nursing staff, central office will not know to send an interpreter. (Lynch Dep. 49:15–50:7.)

## II. Witter-Merithew's Rebuttal Expert Report

Defendant presents Witter-Merithew as a rebuttal expert to Plaintiffs' expert witnesses, Dr. Judy Shephard-Kegl and Betty Colonomos. In summary, Witter-Merithew opines on the following topics which include but are not limited to:[2]

1. Whether there is "***compelling evidence***" that Defendant refused to provide interpreter services;

2. Whether Plaintiffs and the rest of the Durand family were responsible for Defendant's failure to provide effective communication;

3. The hypothetical proposition of whether Plaintiffs would have understood the sign language interpreters even if Defendant provided sign language interpreters as requested;

4. Whether Priscilla Durand engaged in the process of "interpreting" for her parents on May 8-9, 2013;

---

[2] Plaintiffs have attempted to set forth generally each topic Witter-Merithew covers. *See infra* note 5.

5. Whether Roger and Linda understood everything that Priscilla Durand interpreted to them regarding the health of Shaun;

6. Whether Defendant's delays in the provision of sign language interpreters on May 8, 2013 and May 9, 2013 occurred as a result of a national sign language interpreter shortage;

7. Whether Priscilla possesses the ability to interpret between English and sign language;

8. The definition of the sign language interpreting process;

9. The problems and ethical considerations that may arise when a Child of a Deaf Adult ("CODA") interprets for his/her parents; and

10. The number and percentage of certified sign language interpreters nationwide.[3]

Witter-Merithew has a Masters of Education degree from Athabasca University, two graduate certificates in Teaching ASL Interpreting and Distance Education and Technology, and has been a certified sign language interpreter for over forty years. (Witter-Merithew Dep. Ex. 4 at 5, 7–8;[4] Witter-Merithew Dep. Ex. 3, Witter-Merithew *Curriculum Vitae* 1, 5.) Witter-Merithew's parents were deaf, (Witter-Merithew 4), and she currently serves as the Interim Executive Director for the Registry of Interpreters for the Deaf, Inc. (*Id.* at 5.)

---

[3] Plaintiffs object to #1–6 as inadmissible. Plaintiffs do not object to #7–10, although Plaintiffs disagree that #10 is a rebuttal topic to either Dr. Shephard-Kegl or Betty Colonomos's reports.

[4] Plaintiffs hereinafter cite Witter-Merithew's Rebuttal Expert Report, Witter-Merithew Ex. 4, as "Witter-Merithew" followed by the pincites.

At the outset of her report, Witter-Merithew states that Defendant hired her as a rebuttal expert "to offer consultation on issues related to communication with individuals who are deaf and the provision of interpreting services . . . as it pertains to [this] matter," specifically regarding "the plaintiff's [sic] expert report, dated 4/6/16, submitted by Dr. Judy Shepard-Kegl." (*Id.* at 1.) During her deposition, Witter-Merithew testified that Defendant did not provide her with any questions on which to opine, (Witter-Merithew Dep. 56:7–21), rather Defendant "asked [her] to review the material and to indicate to them what [she] saw as the central issues," thereby basing the direction of her report from her own review and analysis of the material that she was provided. (*Id.* at 55:9–21; *see also id.* at 55:22–56:6.)

As a result, Witter-Merithew's report comprises of numerous conclusions that are intermingled with a myriad of conclusory statements reflecting Witter-Merithew's rendition of selected facts from the record.[5] (*See* Witter-Merithew 12–21; *see also* Witter-Merithew Dep. 55:9–56:21.)

---

[5] While Witter-Merithew initially states that her report will proffer only three expert conclusions, (Witter-Merithew 4), further reading of her analysis section on pages 12–20 entitled "V. Opinions" and summary of conclusions on pages 20–21 entitled "VII. [sic] Summary" proffers many more side-step opinions and conclusions beyond the three points initially set forth as her primary objectives on which to opine. (*See id.* at 12–21.)

Due to the sheer volume and interconnectivity of these additional conclusions and conclusory fact statements, and in an attempt to facilitate judicial efficiency, Plaintiffs respectfully move the Court to limit Witter-Merithew's testimony to what she **may** testify to as opposed to that which she **may not**.

## III.   McGinty Report

Defendant hired McGinty to opine on the ultimate legal question of whether or not Defendant violated the ADA, Rehabilitation Act, and the MHRA when it did not provide interpreters (or alternative aids) to effectively communicate with Roger and Linda. (Ex. A, Op. McGinty 1.)[6]

McGinty is a hospital administrator with a master's degree in Hospital Administration. (McGinty 1; Ex. B, McGinty Resume.) McGinty holds a board certification in hospital administration and has served as CEO of two hospitals. (*Id.*) He now works full-time as a consultant regarding the "design, structure, process and operations of hospitals and healthcare organizations," including "compliance with Federal and State laws . . . ." (*Id.*) Notably, McGinty does not list experience regarding deaf and hard of hearing communication access policy development or experience surrounding disability access in hospital settings in his resume or report. (*Id.*)

Based on his personal knowledge and experience, McGinty's report proffers five main conclusions. (*See* McGinty 3–4.) He first concludes that Defendant's policies and procedures were "in compliance with national standards and complied with The Joint Commission, the hospital's accrediting body." (*Id.* at 3.) Without explaining how he arrived at this conclusion and without providing any reference from his review of the record to support his conclusion, McGinty proffers, that because Defendant's policies and procedures were in compliance with national and the Joint Commission's standards—

---

[6] Plaintiffs hereinafter cite McGinty's Expert Report, Ex. A, as "McGinty" followed by the pincites.

which, according to McGinty, "meet or exceed" federal regulations (*id.* at 4, 8)—Defendant did not violate the law. (*See* McGinty 3–4.)

Second, McGinty opines on whether Defendant satisfied its legal burden to accommodate Plaintiffs' request for effective communication, and concludes—without providing any reference in support of his position—that Defendant "*clearly* made a *reasonable* and *appropriate effort* and delivered interpreter services promptly when requested." (*Id.* at 3 (emphasis added).) McGinty does not opine on (and cannot opine on) whether communication was, in fact, effective.

For his third conclusion, and again without providing any reference in support of his position, McGinty concludes that accommodating Plaintiffs' request by providing a sign interpreter whenever a physician was present was "*not reasonable or appropriate* for non-decision making [sic] family members." (*Id.*) While McGinty does not define what he means by "reasonable" or "appropriate," he does acquiesce that there may be certain situations, where the provision of sign language interpreters on an as-needed basis would be appropriate dependent on a "specific patient need." (*Id.*) However, McGinty concludes that this situation "*certainly* was not the case for Shaun Durand." (*Id.*)

McGinty's fourth conclusion opines that Defendant was permitted to share Shaun's healthcare information with his parents during the patient care conference under the Health Insurance Portability and Accountability Act ("HIPAA"). (*Id.* at 4.)

Finally, he opines, based on his personal opinion, that "[t]here is not the same importance nor necessity for [disabled] non-decision maker family members, visitors or

the public to be provided with the same level of response and availability of interpreter services." (*Id.*)

## **LEGAL STANDARD**

To be admissible, an expert's opinion testimony must be both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (holding that *Daubert* applies to all expert testimony). It is the trial court's role to "serve as gatekeepers to insure proffered expert testimony is both relevant and reliable." *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006).

Rule 702 of the Federal Rules of Evidence governs in part the admissibility of expert testimony, whether in the form of an affidavit or a report. Under Rule 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

*Kramer v. Ford Motor Co.*, No. 12-CV-1149, 2016 WL 827746, at *3 (D. Minn. Feb. 29, 2016) (citing Fed. R. Evid. 702).

Therefore, "proposed expert testimony must meet three prerequisites in order to be admitted under Rule 702": (1) "evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact"; (2) "the proposed witness must be qualified to assist the finder of fact"; and (3) "the proposed

evidence must be reliable or trustworthy in an evidentiary sense . . ." *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 591).

The inquiry as to the reliability and relevance of the testimony is designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. When evaluating the reliability and relevancy of an expert's testimony, courts must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 597. "Both the Eighth Circuit Court of Appeals and the Supreme Court have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise, or that are not founded on a reliable methodology." *Teska v. Potlatch Corp.*, 184 F.Supp. 913, 919 (D. Minn. 2002). Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757–58 (8th Cir. 2006).

It is Defendant's burden to prove that its proffered expert testimony is admissible under Rule 702. *See Lauzon*, 270 F.3d at 686.

## **LEGAL ARGUMENT**

**I.** **Motion to Limit Witter-Merithew's Expert Report & Testimony, and to Exclude Inadmissible Conclusions**

Witter-Merithew presents her report in three sections in which she attempts to opine on: (1) whether Defendant "refused to offer interpreting services, (2) whether the presence

of interpreters mitigated the circumstances surrounding the communication issues that existed, and (3) whether the expectation for on-demand, face-to-face interpreters in this situation [was] reasonable and feasible." (Witter-Merithew 4.) Throughout the subsequent portions of her report, however, Witter-Merithew proffers many more conclusions, and what appear to be observations and conclusory factual statements based on her view of the facts, beyond the three conclusions she initially sets forth. (*See id.* at 12–21.)

As summarized by Plaintiffs,[7] Witter-Merithew reaches the following conclusions, which include but are not limited to:

1. There is "***no compelling evidence***" that Defendant refused to provide interpreter services;

2. Plaintiffs and the rest of the Durand family were responsible for Defendant's failure to provide effective communication;

3. Plaintiffs would not have understood the sign language interpreters even if Defendant provided them as requested;

4. Priscilla Durand did not engage in the process of "interpreting" for her parents on May 8-9, 2013;

5. Roger and Linda understood everything that Priscilla Durand communicated to them regarding the health of Shaun; and

---

[7] *See supra* notes 2, 5.

6. Defendant's delays in the provision of sign language interpreters on May 8, 2013 and May 9, 2013 possibly occurred as a result of a national sign language interpreter shortage.

Plaintiffs object to Witter-Merithew's testimony and conclusions regarding #1–#6 and much of her opinions in her report. Such conclusions are inadmissible because they: (1) evaluate the weight and sufficiency of evidence, and therefore usurps the fact-finding and credibility functions of the jury; (2) are comprised of inadmissible legal conclusions reserved for this Court's determination; (3) are not based on any valid methodology or scientific reasoning, and therefore do not meet the requisite level of reliability for expert testimony; and (4) are not based on any scientific, technical, or other specialized knowledge, and/or are not relevant to the issues at trial.

Accordingly, Plaintiffs respectfully move this Court to limit Witter-Merithew's testimony to only the following issues: (1) Whether Priscilla possess the ability to interpret between English and sign language; (2) the definition of the sign language interpreting process; (3) the problems and ethical considerations that may arise when a CODA interprets for his/her parents; and (4) the number and percentage of certified sign language interpreters nationwide.

**A. The Court should exclude Witter-Merithew's testimony based on her weighing of the evidence to conclude that "there is no compelling evidence" that Defendant refused to provide interpreter services" as it usurps the jury's role, is within the competency of the jury, and/or is a legal conclusion.**

Plaintiffs object to Witter-Merithew's testimony and conclusion that "there is *no compelling evidence* that Fairview Ridges Hospital refused to offer interpreter services,"

(Witter-Merithew 12–15 (emphasis added)), as it usurps the jury's role, is within the competency of the jury, and/or is a legal conclusion.

By way of introduction, it is unclear based on her report whether Witter-Merithew is presenting a legal conclusion or determining a disputed question of fact because it appears she is doing both. Whether Defendant refused interpreter services by failing to provide such services is a disputed question of fact that only the jury can determine. Whether there is "*compelling*" evidence to survive a motion for summary judgment is for courts to determine. In either way, such testimony by an expert is inadmissible. It is also inadmissible as both the court and the jury possess the abilities to reach (or not reach) this potential conclusion on their own.

Therefore, the Court should exclude this testimony as it: (1) usurps the fact-finding and credibility functions of the jury; (2) is within the jury's competence to determine on its own; and (3) is a legal conclusion, which impinges the responsibilities of the court.

1. **Witter-Merithew's testimony as to whether "there is no compelling evidence is inadmissible because it usurps the fact-finding and credibility functions of the jury.**

By testifying to the sufficiency and weight of evidence regarding a significantly disputed fact in this matter, Witter-Merithew's conclusion that "there is no compelling evidence Defendant refused to provide interpreters" usurps the fact-finding and credibility functions of the jury, and is therefore inadmissible.

Experts may not "testify that a disputed fact actually occurred or that one witness is more credible than another." *Thomas v. Barze*, 57 F.Supp.3d 1040, 1061 (D. Minn. 2014). While it is true that "an expert may express an opinion that is based on facts that the expert

assumes, but does not know, to be true," an expert may not testify as to whether a disputed fact actually occurred. *Id.* at 1061 (quoting *Williams v. Illinois*, 132 S.Ct. 2221, 2228, 183 L.Ed.2d 89 (2012)). Expert testimony must also be excluded when such testimony is "too intertwined with [a party's] version of events and [the expert] fail[s] to clarify that assumption." *Id.* at 1059.

Witter-Merithew comes to this conclusion solely from a reading and choosing what she wanted to believe from the record. (Witter-Merithew Dep. 55:22–56:6, 57:16–58:5; 59:6–14.) She does not apply any experience or specialized knowledge to draw her conclusion about the reading of the deposition transcripts. (*Id.* at 56:5–6, 57:23–58:7, 59:6–14.)

Like the excluded expert's testimony in *Barze*, Witter-Merithew draws her conclusions based on what Defendant wishes the record reflected in a compelling manner, adopting Defendant's preferred rendition of the events while discounting Plaintiffs' testimony and less favorable testimony by Defendant's witnesses. Also like the excluded expert's testimony in *Barze*, "at no point in [her] report does [Witter-Merithew] establish that [her] opinions are based on an **assumption** that [Defendant's] version of the facts is true, but rather, [she] repeatedly presents [her] opinions **based on** a version of the facts that appears to be [her] own conclusions about what occurred." *Id.* at 1061 (emphasis original). Therefore, by testifying to the sufficiency and weight of evidence regarding a significantly disputed fact in this matter, Witter-Merithew's testimony and conclusion usurps the fact-finding and credibility functions of the jury. Accordingly, the Court should exclude such testimony.

## 2. Witter-Merithew's testimony as to whether there is "compelling evidence" is inadmissible because it is a conclusion that is within the jury's competence to determine.

Witter-Merithew's conclusion as to whether there is "compelling evidence that Defendant refused to provide interpreters" is also inadmissible because it is well within the jury's competency to reach (or not reach) this same potential conclusion on its own. The jury can listen to testimony, think critically and weigh evidence proficiently without a proposed "expert in critical thinking" to do it for them.

"[A]n expert who simply 'draws inferences or reaches conclusions within the jury's competence' does not provide 'helpful' testimony under Rule 702." *Somnis v. Country Mut. Ins. Co.*, 840 F.Supp.2d 1166, 1173 (D. Minn. 2012). "Given that '[e]xpert evidence can be both powerful and quite misleading,' *Daubert*, 509 U.S. at 595, the Court must be particularly careful to exclude such testimony if it might lead the jury to simply rely on the expert's opinion and 'surrender[ ][its] own common sense.'" *Id.* (quoting *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995)).

Evaluating the sufficiency of evidence is the main role of the jury and the ability to do so is certainly within the jury's competence. Witter-Merithew even testified herself that reaching her conclusions about whether Fairview refused to offer an interpreter does not "require[] unique experience." (Witter-Merithew Dep. 57:23–58:7.) Witter-Merithew testified that she reached this conclusion by applying "critical thinking skills" and "the ability to read deposition testimony." (*Id.* at 59:6–14.) Expert testimony on this type of conclusion is not permissible or even helpful because competent jurors hold critical thinking skills and the ability to understand testimony. As such, Witter-Merithew's expert

testimony as to whether there is compelling evidence that Defendant refused to offer an interpreter is not helpful to the fact-finder. *See Somnis*, 840 F.Supp.2d at 1173. Accordingly, the Court should exclude this testimony.

### 3. Witter-Merithew's testimony as to whether there is "*compelling* evidence" is inadmissible because it is a legal conclusion.

Finally, Plaintiffs object to Witter-Merithew's conclusions that "[t]here is no '*compelling evidence*' that Defendant refused to provide interpreting services" because determining whether the record contains *compelling* evidence is a legal conclusion, which impinges on the responsibilities of the court. Because expert's may not provide legal conclusions, the Court should exclude Witter-Merithew's testimony as to whether the evidence in this matter is *compelling*.

"[E]xpert testimony on legal matters is inadmissible." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (holding that if the issue in a case is "about whether federal law was contravened," then "expert opinion as to that [is] simply inadmissible"); *Barze*, 57 F.Supp.3d at 1062–63; *Nat'l Assn of the Deaf et al. v. District Hosp. Partners, L.P.*, No. 14-1122, 2016 WL 447444 (D.D.C. Feb. 4, 2016) (excluding Defendant Hospital's proffered expert testimony—which assessed and concluded that Defendant's policies regarding the provision of effective communication with the deaf plaintiffs and concluded that Defendant's policies were compliant with Title III of the ADA—as such testimony "inappropriately opines on whether the legal standard relevant to this case has been met").

Determining whether the record contains "*compelling* evidence" is a legal conclusion because it requires an application of the facts to the law. *See also Barze*, 57 F.Supp.3d at 1062. At the time of summary judgment, for instance, district courts determine whether the record contains compelling evidence as a party is entitled to judgement as a matter of law by showing that the opposing party cannot produce any compelling evidence to support a genuinely disputed fact. *See* Fed. R. Civ. P. 56(c)(3); *Saunders v. Mayo Clinic*, No. 13-1972, 2015 WL 774132, a *3 (D. Minn. Feb. 24, 2015).

However, expert opinions that are "phrased in terms of inadequately explored legal criteria" or that "*attempt to tell the court what result to reach*" are inadmissible as they are considered unhelpful. *Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742, 751–52 (8th Cir. 2003) (affirming exclusion of expert's legal conclusions because they attempted to tell the court what result to reach) (emphasis added), *cert. denied*, 540 U.S. 1219 (2004); *see* Fed. R. Evid. 704 advisory committee's note; *Barze*, 57 F.Supp.3d at 1062 (holding that an expert's use of phrases explicitly with reference to their legal significance constitutes inadmissible legal conclusions).

In this matter, whether Defendant failed to provide interpreting services is a significant factual dispute. Witter-Merithew arrives at her conclusion by referencing portions of the record according to what she chose to believe from the record—while notably omitting significant portions of the record that discredit her conclusion—to make conclusory statements about what she perceives as "weaknesses."

Similar to the excluded expert in *Barze*, Witter-Merithew uses the phrase "compelling" in her conclusion explicitly with reference to its legal significance to

conclude that no evidence in the record rises to the level of "compelling" in support of Plaintiffs' claims.

Critically, like the excluded expert in *Dow Corning*, Witter-Merithew's conclusion is nothing more than a veiled attempt to tell this Court which result to reach in deciding summary judgment. Determining there is compelling evidence in the record to survive summary judgment is the Court's responsibility, not Witter-Merithew's as an expert.

Accordingly, Witter-Merithew's testimony is an inadmissible legal conclusion that the Court should exclude.

**B. The Court should exclude Witter-Merithew's testimony that "Plaintiffs and the rest of Durand family are responsible for Defendant's failure to provide effective communication" as it is not based on any scientific, technical, or other specialized knowledge, opines on what factually occurred, and is based on an incorrect legal standard.**

Also scattered throughout Part V, Section 1 of her report, Witter-Merithew weighs the evidence and forms a one-sided belief that the Plaintiffs and the rest of their family were responsible for Defendant's failure to provide effective communication. (Witter-Merithew 12–15; Witter-Merithew Dep. 115:25–117:3, 123:16–124:23.) Such testimony includes statements such as:

- "Who was responsible for requesting interpreters and in what manner within the family seemed haphazard," (Witter-Merithew 12);

- "What these many inconsistencies demonstrate is a shared responsibility for the alleged failure of effective and appropriate inclusion and access for Linda and Roger Durand." (*Id.*); and

- "The family, and particularly Linda and Roger Durand, failed to assert a clear directive as to what they required in order to achieve their desired level of access and understanding." (*Id.*)

Witter-Merithew's attempt to blame Plaintiffs for Defendant's failure to provide effective communication, however, is not expert testimony but rather a (biased) lay person's commentary on select deposition testimony. It is not based on any scientific, technical, or other specialized knowledge or opinions. Furthermore, it reflects an incorrect legal standard. Accordingly, the Court should exclude such testimony and conclusion.

**1. Witter-Merithew's testimony and conclusion that "the Durands are responsible for Defendant's failure to provide effective communication" is inadmissible because as it is not based on any scientific, technical, or other specialized knowledge, and directly comments on who was at fault.**

This Court should exclude Witter-Merithew's testimony and conclusion that the "Durands were responsible for Defendant's failure to provide effective communication" because as it is not based on any scientific, technical, or other specialized knowledge, and directly comments on who was at fault.

Expert testimony must be "based on scientific, technical, or specialized knowledge," *Barze*, 57 F.Supp.3d at 1059, and may not "testify that a disputed fact actually occurred . . . ." *Id.* at 1060.

Here, Witter-Merithew's testimony and conclusion that the Durands are at fault is a determination of a factual dispute that goes to the ultimate question of law. Witter-Merithew attempts to opine on what factually occurred on May 8-9, 2013 based on her reading on the record. For instance, her report states that "[t]he family, particularly Linda

and Roger Durand, failed to assert a clear directive as to what they required in order to achieve their desired level of access and understanding." (Witter-Merithew 14.)

However, Witter-Merithew does not explain how she reached her conclusion that the Durands were responsible, nor what specialized knowledge or methodology she applied (if this were even possible), nor if she applied any technical analysis. (*Id.* 12–15.) Instead, she bases her conclusions upon *her personal beliefs* and *interpretation* of the evidence. However, Witter-Merithew was not present with the Plaintiffs during Shaun's hospitalization. (*See* Witter-Merithew Dep. 65:21–24.) Therefore, testimony regarding whether the Durands did or did not do something the law requires is a legal conclusion that is outside of Witter-Merithew's personal experience to testify to as an expert.[8] *See Barze*, 57 F.Supp.3d at 1060.

Because Witter-Merithew's testimony and conclusion that "the Durands are responsible for Defendant's failure to provide effective communication" is not based on any scientific, technical, or specialized knowledge, and directly comments on who was at fault, the Court should exclude such testimony.

---

[8] The entire section in Witter-Merithew's report on whether or not Linda and Roger Durand were assertive enough in their request for an interpreter is also not rebuttal testimony to Dr. Judy Shephard-Kegl's report.

**2. Witter-Merithew's testimony that "the Durands are responsible for Defendant's failure to provide effective communication" is inadmissible because it reflects an incorrect legal standard.**

Plaintiffs also object to Witter-Merithew's testimony that the Durands are responsible for Defendant's failure to provide effective communication because it reflects an incorrect legal standard.

Expert testimony based on incorrect legal standards is not admissible as "[i]ncorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories." *Id.* (citing *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996). Furthermore, the court should not admit opinion evidence that "is connected to existing data only by the *ipse dixit* of the expert." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006).

Based on her belief of selected facts from the record, Witter-Merithew concludes that the Durands are responsible for Defendant's failure to provide effective communication. Witter-Merithew places the burden on Plaintiffs, as disabled individuals unfamiliar with Defendant's protocols and system, to ensure they receive effective communication.

This imposition of a duty on the disabled parents, who have no knowledge of when doctors will be coming and going and at what points interpreters will be needed does not reflect the correct legal standard under Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Rehab Act"), and the Minnesota Human Rights Act ("MHRA"). Under the ADA, Rehab Act, and MHRA, *places of public accommodation*, not deaf individuals and their companions, have an affirmative burden to

take all steps necessary to ensure that deaf individuals receive effective communication. *See* 42 U.S.C. § 12182; 29 U.S.C. § 794; Minn. Stat. § 363A.11. Deaf family members do not have the legal obligation to pester the hospital staff repeatedly before the obligation of the public accommodation to provide communication ignites. Witter-Merithew's opinion, "that the Durands should have done more," is merely the *ipse dixit* of her report, and is vastly in contrast with anti-discrimination laws and Defendant's own training of its employees. (*See* Pennington Dep. Ex. 2 at 8.)

Because Witter-Merithew's testimony and conclusion that the Durands are responsible for Defendant's failure to provide effective communication is based upon an incorrect legal standard, the Court should exclude this testimony.

### C. The Court should exclude Witter-Merithew's testimony and conclusion that "Plaintiffs would not have been able to understand sign language interpreters even if Defendant had provided interpreters" because it is not based upon any scientifically valid methodology or reasoning.

Plaintiffs also object to Witter-Merithew's testimony and conclusion that, essentially, "Plaintiffs would not have been able to understand sign language interpreters even if Defendant had provided interpreters" because it is not based upon any scientifically valid methodology or reasoning and is, instead, based on Witter-Merithew's weighing of the evidence. (*See* Witter-Merithew 4, 15–17, 21; Witter-Merithew Dep. 61:12–62:14, 78:4–80:1, 135:9–137:6, 142:1–144:7, 144:19–146:8.)

This testimony requires data evidencing the cognitive abilities of Roger and Linda and their respective sign language receptive skills of the interpreters on-site who would have been there (but were not) throughout all interactions. Yet Witter-Merithew had no

such data on which to draw these conclusions as she did not evaluate the Durands' ability to comprehend and understand sign language, nor did she evaluate the skills of any interpreters involved. (Witter-Merithew Dep. 66:23–67:4, 77:2–12, 77:19–80:1.)

Instead, Witter-Merithew bases her testimony and conclusions upon her weighing of the record and leaping assumptions. Accordingly, such testimony should be excluded.

### 1. Requisite Legal Standard Regarding the Reliability of Expert Testimony

In performing its gatekeeping function, courts must ensure that the proffered expert testimony "rests on a reliable foundation." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 714–15 (8th Cir. 2001). "To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence both that the expert witness is qualified to render the opinion and that the methodology underlying his or her conclusions is scientifically valid." *Marmo*, 457 F.3d at 757–58; *Solheim Farms, Inc. v. CNH Am., LLC*, 503 F. Supp.2d 1146, 1149–50 (D. Minn. 2007). *Daubert* provides a number of nonexclusive factors courts may apply in performing its role as gatekeeper in screening the proffered expert testimony for relevance and reliability. 509 U.S. at 593–94.

In order for expert testimony to be reliable, there must be "a reasonable factual basis for [the expert's] testimony." *Teska v. Potlatch Corp.*, 184 F.Supp.2d 913, 919 (D. Minn. 2002). Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo*, 457 F.3d at 757–58; *Solheim Farms*, 503 F. Supp. 2d at 1149.

## 2. Witter-Merithew did not base her testimony and conclusion upon any scientifically valid reasoning or methodology.

Here, Witter-Merithew's conclusion does not satisfy the reliability requirement for expert testimony because she did not apply any methodology upon which to base her conclusion that, in summary, states, "Plaintiffs would not have been able to understand sign language interpreters even if Defendant had provided interpreters as requested."

Plaintiffs assert that their primary language is ASL. (*See* Compl. ¶¶ 9, 11; L. Durand Dep. 67:8–18.) After performing various assessments and meeting with both Roger and Linda for several hours, Plaintiffs' expert, Dr. Judy Shepard-Kegl, Ph.D.—an expert linguist in both ASL and English with a Ph.D. in Linguistics from M.I.T. and a certified ASL interpreter—concluded that both Roger and Linda had mastery of Basic Interpersonal Communication Skills ("BICS") and Cognitive Academic Language Proficiency ("CALP") in both ASL and English. (Shepard-Kegl Dep. Ex. 3 at 60, 77, 80, 81, 97; Shepard-Kegl Dep. 103:24–109:9, 186:17–189:8, 204:13–20; *see generally* Shepard-Kegl. at 20–57.) In other words, based on her assessments of their abilities, Dr. Shepard-Kegl concluded that both Roger and Linda are fully competent to comprehend information, both explicit and implicit, that is communicated to them in ASL. (Shepard-Kegl 77, 97.)

Witter-Merithew, on the other hand, did not apply *any* type of assessment or methodology in reaching her conclusion. She did not (and could not) evaluate the interpreting skills of the two interpreters who briefly interpreted for Plaintiffs during Shaun's hospitalization in May 2013. (Witter-Merithew Dep. 66:23–67:4.) She did not assess the language abilities, whether English or ASL, of either Roger or Linda. (*Id.* at

67:5–7, 77:2–10, 77:19–78:1.) She did not assess the BICS or CALP abilities, whether in ASL or English, of either Roger or Linda, (*id.* at 78:6–13), nor did she even disagree with Dr. Shepard-Kegl's conclusions that Roger and Linda had full mastery of both BICS and CALP in ASL, and thereby had proficient ability to understand explicit and implicit information communicated to them via ASL. (*Id.*) Critically, Witter-Merithew self-represents that she is *not qualified* to assess the BICS and CALP capabilities of individuals. (*See id.* at 28:6–18.)

Instead of grounding her conclusions upon scientifically valid methods, Witter-Merithew bases conclusions on the hypothetical idea "even if Roger and Linda had interpreters they couldn't have understood" on her highly speculative and scientifically baseless beliefs. (*See* Witter-Merithew 15, 16.) Despite her lack of qualifications and a failure to perform *any* type of assessment or application of methodology, Witter-Merithew attempts to proffer her hypotheses doubting Roger and Linda's abilities to understand explicit and implicit information in ASL as an expert conclusion. Such testimony is inadmissible as it is based on speculation and is wholly unsupported by sufficient facts, data, scientific methods, or expert analysis to set forth and allow a fact-finder to follow her steps to reach her rather absurd conclusion that Roger and Linda would not have been able to understand sign language interpreters.

Therefore, Witter-Merithew's testimony and conclusion here is inadmissible as: (1) Witter-Merithew is not qualified to opine on the BICS and CALP capabilities of Roger and Linda; (2) it is not grounded in any scientifically valid reasoning or methodology; (3) it is

based upon mere speculation and unsupported by sufficient facts. Accordingly, the Court should exclude her testimony.

### D. The Court should exclude Witter-Merithew's testimony that essentially concludes "Roger and Linda understood everything Priscilla communicated to them regarding Shaun's health" because it is not grounded in reliable methodology.

Plaintiffs object to Witter-Merithew's testimony that essentially concludes that "Roger and Linda understood everything that Priscilla communicated to them regarding Shaun's health." (*See* Witter-Merithew 14.) Specifically, Witter-Merithew opines that the communication method used between Priscilla and her parents "appeared to work." (*Id.*)

This testimony, however, does not meet the requisite level of reliability that is demanded of expert testimony as she did not base it on any scientifically valid methodology. As stated previously, expert testimony must "rest[] on a reliable foundation." *Wheeling Pittsburgh Steel Corp.*, 254 F.3d at 714–15. "To satisfy the reliability requirement, the party offering the expert testimony must show by a preponderance of the evidence both that the expert witness is qualified to render the opinion and that the methodology underlying his or her conclusions is scientifically valid." *Marmo*, 457 F.3d at 757–58; *Solheim Farms*, 503 F. Supp.2d at 1149–50.

Witter-Merithew concedes that she did not apply any scientific, linguistic, or other analysis when she reached this conclusion. (Witter-Merithew Dep. 114:1–10.) Witter-Merithew did not evaluate either Roger or Linda Durand's ability to understand Priscilla's communication ability, nor did she evaluate Priscilla's ability to understand her parents. (*Id.* at 53:9–13, 77:2–12, 77:19–80:1.)

Instead, Witter-Merithew's unsubstantiated conclusion is based on her opinion that that communication between Roger, Linda, and Priscilla "appeared to work" in May 2013 upon her beliefs formulated from selected statements from depositions. (*Id.* at 113:3–115:8.) Witter-Merithew did not base her conclusion upon any methodology. Moreover, no methodology or standard exists to test whether communication between people "appears" to work. Accordingly, such testimony should be excluded.

### E. The Court should exclude Witter-Merithew's testimony that essentially concludes "Priscilla was not conveying the communications and thought-worlds of Shaun's healthcare providers to her parents" because it directly opines on what actually occurred in May 2013.

Plaintiffs object to the admissibility of Witter-Merithew's testimony that essentially concludes "Priscilla was not conveying the communications and thought-world of Shaun's healthcare providers to her parents" because it directly opines on what actually occurred in May 2013. Because Witter-Merithew is not a fact-witness to the interactions between the parties in May 2013, her testimony as to what factually occurred is inadmissible; therefore, the Court should exclude this testimony.

As stated previously, experts may not "testify that a disputed fact actually occurred . . . ." *Barze*, 57 F.Supp.3d at 1061. Expert testimony must be excluded when such testimony is "too intertwined with [a party's] version of events and fails to clarify that assumption." *Id.* at 1059.

Witter-Merithew opines that Priscilla Durand did not "interpret" for Roger and Linda during Shaun's hospitalization. (Witter-Merithew 13; Witter-Merithew Dep. 99:13–100:11.) She bases this conclusion upon her weighing and interpretation of the record to

conclude that Priscilla Durand was not conveying the communications and thought-worlds of Shaun's doctors and nurses to Roger and Linda, but rather, Priscilla was merely communicating her own ideas and summaries of such communications. (Witter-Merithew Dep. 101:11–102:18.) Whether or not Priscilla interpreted for Roger and Linda by conveying the thought-world of the medical providers is a disputed question of fact for the jury to determine. Accordingly, this testimony and conclusion is inadmissible as Witter-Merithew is testifying that a disputed fact did not actually occur.

Like the excluded expert in *Barze*, Witter-Merithew's statements and conclusions appear to comment directly on what occurred. (*See, e.g.*, Witter-Merithew Dep. 103:21–104 ("[Priscilla] put [the healthcare providers' communications] into a way of communicating that she was comfortable in using in communicating ideas or information as she understood it."); *id.* at 105:1–3 ("[W]hat [Priscilla] was using was her signing capacity at that point, . . . she wasn't following an interpreting process."); *id.* at 105:3–6 ("[Priscilla] was communicating to [her parents] directly after the fact her understanding of what had transpired.")).

Also, like the excluded expert in *Barze*, not only is the issue of whether or not Priscilla "interpreted" for her parents a factual determination for the jury to decide as a question of fact, but it is a factual conclusion that is not within Witter-Merithew's personal experience and instead are matters to which Priscilla, Roger, Linda, Fairview nurses and doctors, and any other fact witness who witnessed such interactions could testify, "testimony that the jury could choose to believe or not." 57 F.Supp.3d at 1060. Witter-Merithew was not present when these interactions occurred in May 2013, thus she is not a

fact witness. By directly testifying that Priscilla did not interpret for her parents, Witter-Merithew's testimony and conclusion usurps the role of the jury.

Accordingly, the Court should exclude Witter-Merithew's conclusions.

**F. The Court should exclude Witter-Merithew's conclusion that "Any possible delays in the provision of interpreters during May 8, 2013 through May 9, 2013 occurred as a result of sign language interpreters not being available at that time based on nationwide statistics."**

Finally, Witter-Merithew testifies and concludes that there was a "high probability" that the limited number of available qualified sign language interpreters—based on a nationwide survey and statistics—"contributed to the long wait periods between the requests for an interpreter by the Durand family, and the arrival of interpreters at the hospital." (Witter-Merithew 20, 21; Witter-Merithew Dep. 64:23–66:22.) She further opines that it "may also account, at least in part, for the fact that in some instances, interpreters were simply not available, although requested." (Witter-Merithew 20.) However, not only is there no evidence presented by Defendant that it was unable to provide interpreters for Plaintiffs due to a shortage of interpreters, but Defendant has not alleged this as an affirmative defense. Witter-Merithew does not base her conclusion on any data of availability of interpreters in the Twin Cities generally, or data of availability of interpreters on May 8-9, 2013. It is also not a rebuttal conclusion to Dr. Shephard-Kegl's report. Accordingly, the Court should exclude such testimony and conclusions because it is not relevant to the facts at issue.

As the Supreme Court has held, trial judges must ensure that expert testimony "is relevant to the task at hand." *Kumho Tire*, 526 U.S. at 141. Under *Daubert*, district courts

must ensure that an expert's basis for his or her testimony can properly "be applied to the facts in issue." 509 U.S. at 592–93; *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1055 (8th Cir. 2000.) In other words, courts must ensure that "expert testimony preferred in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Concord Boat*, 207 F.3d at 1055 (quoting *Daubert*, 509 U.S. at 591) (internal quotation marks omitted). "The Court referred to this requirement as 'fit,' meaning that the expert testimony must not only be based on reliable science but must also 'fit' the particular facts of the case." *Id.*

Here, Witter-Merithew testifies and concludes that there was a high probability that the limited number of certified medical interpreters based on nationwide statistics contributed to the long delays between Plaintiffs' requests for interpreters and Defendant's provision of interpreters. (Witter-Merithew 20, 21; Witter-Merithew Dep. 64:23–66:22.) Independent of the facts and claims at issue in the case, Witter-Merithew opines that the "field of sign language interpreting is in a state of market disorder" that impacts the provision of interpreters nationwide. (Witter-Merithew 17.) She then hypothesizes that the delays and/or periods in which Defendant did not provide an interpreter despite Plaintiffs' requests may be due to an inability outside of Defendant's control to secure interpreters. (Witter-Merithew 20, 21.)

However, whether interpreters were available to interpret for Plaintiffs is not at issue in the case. Defendant does not claim that the reason it did not provide interpreters upon all of Plaintiffs' requests was due to interpreters being unavailable. Furthermore, Witter-Merithew acknowledges that Defendant did not represent to her that the delays and/or

failure to provide an interpreter was a result of a possible difficulty to secure interpreters for Plaintiffs. (Witter-Merithew Dep. 154:3–16.)

Because whether or not interpreters were available for Defendant to provide to Plaintiffs in May 2013 is not at issue in this matter and/or is not a fact disputed by either party, this is not an issue and/or disputed fact that a jury must resolve. Therefore, Witter-Merithew's testimony and conclusion that "any delays and/or periods in which Defendant did not provide an interpreter to Plaintiffs may be due to the limited number of interpreters nationwide" is not sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *See Concord Boat*, 207 F.3d at 1055. Accordingly, the Court should exclude this testimony.

## II.    Motion to Exclude McGinty's Expert Report & Testimony

Defendant hired McGinty to opine on the ultimate legal question of whether or not Defendant violated the ADA, Rehab Act, and MHRA by failing to provide effective communication to Plaintiffs. Based on his review of the documents supplied to him by Defendant, McGinty's report proffers the following five main conclusions:

(1)    Defendant's policies and procedures regarding communication with deaf individuals complies with the national standards and with the Joint Commission's standards, and because such standards "meet or exceed" federal regulations, Defendant did not violate the law. (*See* Ex. B, Op. McGinty 3–4, 8.)

(2)    Defendant "*clearly* made a *reasonable* and *appropriate effort* and delivered interpreter services promptly when requested." (McGinty 3 (emphasis added).)

(3)  Plaintiffs' request for Defendant to provide a sign interpreter whenever a physician would be present was "*not reasonable or appropriate* for non-decision making [sic] family members." (*Id.*)

(4)  Defendant was permitted to share Shaun's healthcare information with his parents during the patient care conference under the Health Insurance Portability and Accountability Act ("HIPAA"). (*Id.* at 4.)

(5)  "There is not the same importance nor necessity for non-decision maker family members, visitors or public to be provided with the same level of response and availability of interpreter services." (*Id.*)

Such expert testimony is inadmissible as it is testimony that: (1) consists of legal conclusions that impinge upon the responsibilities of the court; (2) usurps the fact-finding function of the jury by making factual determination about disputed facts; and (3) is based on irrelevant standards and misapplied, undisputed facts. For these reasons, Plaintiffs respectfully move this Court to exclude McGinty's report and testimony from the record.

### A.  The Court should exclude McGinty's first and fourth proffered conclusion as they are inadmissible legal conclusions reserved for this Court's determination.

Plaintiffs object to McGinty's first proffered conclusion, which opines on whether Defendant violated federal and state anti-discrimination law by failing to provide effective communication to Plaintiffs, and McGinty's fourth conclusion, which opines on whether Defendant was permitted to share Shaun's healthcare information with his parents during the patient care conference under HIPAA. McGinty's first and fourth proffered conclusions are inadmissible legal conclusions, which supply this Court with no other information other

than what McGinty believes the verdict should be. Accordingly, his testimony should be excluded.

### 1. Expert testimony on legal matters is inadmissible.

As explained above, expert testimony on legal matters is inadmissible. *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *Barze*, 57 F.Supp.3d 1040; *Nat'l Assn of the Deaf et al. v. District Hosp. Partners, L.P.*, No. 14-1122, 2016 WL 447444 (D.D.C. Feb. 4, 2016) (excluding Defendant Hospital's proffered expert testimony—which assessed Defendant's policies regarding the provision of effective communication with the deaf plaintiffs and concluded that Defendant's policies were compliant with Title III of the ADA—as such testimony "inappropriately opines on whether the legal standard relevant to this case has been met").

### 2. McGinty's first proffered conclusion is an inadmissible legal conclusion.

Here, McGinty's first conclusion that Defendant did not violate the law because its policies and procedures met and complied with national standards regarding the provision of sign language services, which allegedly "meet or exceed" the requirements set forth in federal regulations, is plainly a legal conclusion as the issue of whether a party's actions satisfy a legal standard is a question of law. *See Pine Helicopters*, 320 F.3d at 841; *Barze*, 57 F.Supp.3d at 1062–63; *Nat'l Assn of the Deaf*, 2016 WL 447444, at *3–4. McGinty does not testify as to what the standards—which purportedly "exceed or meet" the legal standard—are; rather he reaches the conclusion that Defendant did not violate the law based on his application of such national standards to his understanding of what factually occurred.

Like the excluded expert testimony in *Barze*, McGinty reaches his conclusions based on his application of industry and legal standards to his understanding of the facts of this case, which "is not permissible." *See* 57 F.Supp.3d at 1062–63. Furthermore, like the excluded expert testimony in *National Association of the Deaf*, McGinty's conclusions are inadmissible because they simply provide an opinion that tell the trier-of-fact what result to reach. *See* 2016 WL 447444, at *5. Accordingly, the Court should exclude McGinty's testimony as it constitutes inadmissible legal conclusions that are reserved for this Court's determination.

### 3. McGinty's fourth conclusion is an inadmissible legal conclusion.

McGinty's fourth conclusion, which opines that Defendant was permitted to share Shaun's protected healthcare information with his parents during the patient care conference under HIPAA, is also inadmissible. While Plaintiffs and the record do not dispute that Plaintiffs were authorized to receive such information under HIPAA, such a conclusion is nonetheless inadmissible as expert testimony as it is a legal conclusion.[9]

Whether Defendant was permitted to share Shaun's protected healthcare information with Plaintiffs under HIPAA is a question of law. Here, McGinty's conclusion is based on his application of the legal requirements set forth by HIPAA to his

---

[9] Plaintiffs also note that McGinty inaccurately states healthcare providers' legal obligations under HIPAA stating, "HIPPA [sic] does not allow health care providers to freely share patient information with anyone other than patient and the patient's healthcare representative." (McGinty 4.) Under HIPAA, healthcare providers may disclose protected healthcare information of a patient to such patient's family members, *even if they are not the patient's healthcare representative*, so long as the patient and/or the patient's healthcare representative authorizes the healthcare provider to do so. *See* 45 C.F.R. § 164.510(b).

understanding of the facts in this case. Therefore, despite Plaintiffs' agreement that Defendant was permitted to share Shaun's protected healthcare information with all Plaintiffs, such an expert conclusion is nonetheless an inadmissible legal conclusion. Accordingly, the Court should exclude McGinty's fourth conclusion.

### B. The Court should exclude McGinty's second and third conclusions as they usurp the fact-finding and credibility functions of the jury.

Plaintiffs object to McGinty's second and third proffered conclusions—that (a) Defendant "*clearly* made a *reasonable* and *appropriate effort* and delivered interpreter services promptly when requested," (McGinty 3), and (b) Plaintiffs' requests for interpreters to be present whenever a physician would be present was "*not reasonable or appropriate* for non-decision making [sic] family members," (*id.*)—as such conclusions usurp the fact-finding and credibility functions of the jury by directly opining that a disputed fact actually occurred, thus rendering such conclusions as inadmissible. (*Id.*)

### 1. Expert testimony that usurps the fact-finding and credibility determination functions of the jury is inadmissible.

As explained previously, an expert may not "testify that a disputed fact actually occurred or that one witness is more credible than another." *Barze*, 57 F.Supp.3d at 1061. Furthermore, expert testimony must be excluded when such testimony is "too intertwined with [a party's] version of events and fail to clarify that assumption." *Barze*, 57 F.Supp.3d at 1059.

### 2. McGinty's second and third conclusions directly opine on what factually occurred, and are too intertwined with Defendant's version of the events, the assumption of which McGinty fails to clarify.

Here, without defining "reasonable" nor "appropriate," McGinty's second conclusion opines that Defendant "*clearly* made a *reasonable* and *appropriate effort* and delivered interpreter services promptly when requested." (McGinty 3 (emphasis added).) McGinty's third conclusion opines that Plaintiffs' request to Defendant to provide a sign interpreter whenever a physician would be present was "*not reasonable or appropriate* for non-decision making [sic] family members." (*Id.*)

The parties dispute the sufficiency of Defendant's "efforts" to provide interpreter services and whether Defendant "promptly" provided interpreter services when requested. The parties also dispute whether Plaintiffs' requested accommodation was reasonable.

Like the excluded expert's testimony in *Barze*, McGinty's second and third conclusions are based not only on an assumption that Defendant's version of events is true, but also appears to adopt and endorse Defendant's version of events. Also like the excluded expert's testimony in *Barze*, "at no point in his report does [McGinty] establish that his opinions are based on an **assumption** that [Defendant's] version of the facts is true, but rather, he repeatedly presents his opinions **based on** a version of the facts that appears to be his own conclusions about what occurred." *Id.* at 1061 (emphasis original). Such conclusions are inadmissible as they directly opine on what factually occurred, and are too intertwined with Defendant's version of the events and fail to clarify that assumption. Accordingly, the Court should exclude McGinty's second and third conclusions.

### C. The Court should exclude McGinty's fifth conclusion as it is based on incorrect legal standards.

Finally, the Court should exclude McGinty's fifth conclusion as it is based on an incorrect legal standard and should be considered merely as part of the *ipse dixit* of McGinty's report. *Am. Med. Syst., Inc. v. Laser Peripherals, LLC*, 712 F.Supp.2d 885, 901 (D. Minn. 2010). Courts have held that expert testimony based on incorrect legal standards are not admissible as "[i]ncorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories." *Id.* (citing *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996). Furthermore, court should not admit opinion evidence that "is connected to existing data only by the ipse dixit of the expert." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006).

Here, McGinty's testimony that Roger and Linda's need for a sign language interpreter to communicate with Defendant's staff regarding Shaun's health was not at "the same level of importance nor the same level of necessity" because Defendant does not need to provide "the same level of response and availability of interpreter services" to non-decision maker family members, visitor, and the public does not reflect the correct legal standard under the ADA, Rehab Act, or MHRA. (*See* McGinty 4.)

Under the ADA, Rehab Act, and MHRA, places of public accommodation must provide disabled individuals with the equal opportunity to have access to and benefit from the services, privileges, and programs the places of public accommodation provide to non-disabled individuals. *See* 42 U.S.C. § 12182; 29 U.S.C. § 794; Minn. Stat. § 363A.11.

None of the laws differentiate the "necessity" or "level of importance" regarding the need for interpreter services or other auxiliary aids and services based on a disabled person's "role." Federal regulations state that a public accommodation's obligation to provide auxiliary aids and services to ensure effective communication with individuals with disabilities "includes an obligation to provide effective communication to companions who are individuals with disabilities." 28 C.F.R. § 36.303(c). Nowhere in the anti-discrimination laws or the ADA regulations is a public accommodation's obligation to provide auxiliary aids to ensure effective communication qualified based on whether the disabled person is a decision maker, family member, visitor, or member of the public.

Accordingly, because McGinty's fifth conclusion reflects an incorrect legal standard, the Court should exclude McGinty's fifth proffered conclusion.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully move this Court to exclude all of Witter-Merithew's report and testimony and permit her to opine on only the following issues: (1) Plaintiff Priscilla Durand's interpreting ability; (2) the process of interpreting; (3) the various problems and ethical considerations that may arise when Children of Deaf Adults ("CODAs") interpret for their parents; and (4) the number and percentage of certified sign language interpreters nationwide. Plaintiffs also respectfully move the Court to exclude McGinty's testimony in its entirety for the reasons set forth above.

Respectfully submitted,

DATED: ____September 2, 2016____          GILBERT LAW PLLC

                                          By: ____s/*Heather M. Gilbert*_____
                                               Heather M. Gilbert, #0392838
                                               Terra L. Frazier, #0397465
                                               Winsor Office Plaza
                                               1935 County Road B2 West
                                               Suite 402
                                               Roseville, MN 55113
                                               (651) 340-9642
                                               heather@gilbertlawpllc.com
                                               terra@gilbertlawpllc.com

                                          ATTORNEYS FOR PLAINTIFFS