# PEREGRINE ASSOCIATES, INC.

John C. McGinty, Jr., President

4203 E. Windsor Lane
Columbus, IN 47201

(812) 376.0717
johnmcginty@comcast.net

July 1, 2016

**TRANSMITTED VIA EMAIL**

Matthew S. Frantzen
Gislason & Hunter
701 Xenia Avenue South, Suite 500
Minneapolis, MN 55416

Re: Durand v. Fairview Ridges Hospital
Your File No: 14580-228

Dear Mr. Frantzen:

I am a hospital administrator by training and experience. I have worked in the healthcare field for 41 years. I have an undergraduate degree from Carthage College in Kenosha, WI, and a Masters in Hospital Administration from Xavier University in Cincinnati, OH. I am board certified in hospital administration and a fellow of the American College of Healthcare Executives. For more than half of my career, I served as CEO of two hospitals, Kenosha Memorial Hospital in Kenosha, WI, and Columbus Regional Hospital in Columbus, IN. I have served as a healthcare consultant on a part-time basis during my tenure at Columbus Regional Hospital and Kenosha Memorial Hospital. I began full-time consulting and limited legal consultation and expert witness work in 1996. I have consulted with hundreds of hospital medical staffs, governing boards and administrations during the past two decades including organizations in 49 states. My healthcare consulting focus has been on design, structure, process and operations of hospitals and healthcare organizations. This includes working on compliance with Federal and State laws, regulations and licensure; credentialing, quality and peer review with medical staffs; and hospital wide organizational performance improvement. I have attached a copy of my resume, fee schedule and 4-year testimony.

I have reviewed all documents provided me pertaining to this case. They are as follows:

1. CD containing the medical records of Shaun Durand from Fairview Ridges Medical Center
2. Complaint
3. Answer of Fairview Health Services
4. Amended Complaint
5. Amended Answer of Fairview Health Services

1

6. Plaintiffs' Answers to Defendant's Interrogatories
7. Plaintiffs' Responses to Defendant's Request for Production of Documents (with attachments
8. Defendant's Answers to Plaintiffs' Interrogatories (Set I)
9. Defendant's Responses to Plaintiffs' Request for Production of Documents (Set I)
10. Defendant's Supplemental Answers to Plaintiffs' Interrogatories
11. Defendant's Supplemental Responses to Plaintiffs' Request for Production of Documents
12. Defendant's Second Supplemental Answers to Plaintiffs' Interrogatories
13. Defendant's Second Supplemental Responses to Plaintiffs' Request for Production of Documents
14. Copies of the parties' correspondence to the Minnesota Department of Human Rights
15. Plaintiffs' Supplemental Responses to Defendant's Requests for Production of Documents with attachments
16. Defendant Fairview Health Services' Third Supplemental Answers to Plaintiffs' Interrogatories to Defendant – Set I
17. Defendant Fairview Health Services' Third Supplemental Response to Plaintiffs' Request for Production of Documents – Set I with attachments
18. Defendant Fairview Health Services' Fourth Supplemental Response to Plaintiffs' Request for Production of Documents - Set I with attachments
19. Transcripts of depositions of:
    - Plaintiff Priscilla Durand
    - Plaintiff Linda Durand
    - Plaintiff Roger Durand
    - Deb Huitt
    - Amy Klopp
    - Kathryn Lewis
    - Julie Kahn
    - Amy Saladis
    - Lawrence Langston
    - Tanya Payne
    - Erica Otterstedt
20. Protective Order
21. Plaintiffs' Expert Witness Disclosures from:
    - Dr. Judy Ann Shepard-Kegl
    - Betty M Colonomos
22. Plaintiffs' Second Supplemental Answers to Defendant's Interrogatories
23. Plaintiffs' Third Supplemental Response to Defendant's Request for Production of document with documents

24. Fairview's Answers to Interrogatories, including
    - Defendant Fairview Health Services' Sixth Supplemental Answers to Plaintiffs' Interrogatories to Defendant – Set I
    - Defendant Fairview Health Services' Seventh Supplemental Answers to Plaintiffs' Interrogatories to Defendant – Set I
25. Defendant Fairview Health Services' Fifth Supplemental Response to Plaintiffs' Requests for Production of Documents – Set I with documents
26. Transcripts of the depositions of:
    - Ashlee Johnson with exhibits
    - David Durand with exhibits
    - Robert Royal with exhibits
    - Ryan Snorek with exhibits
    - Andre Athey
    - Darlene Durand
    - Pauline Durand
    - Randy Washburn
    - Robert Spicer
    - Tamar Durand
    - Craig Lynch with exhibits
    - Diana Pennington with exhibits
    - Susy Goldschmidt with exhibits
    - Tammy Kasal with exhibits
    - Dr. Doua Her

## Findings and Opinions

From my review of all the documents identified above, Fairview Ridges Hospital met the national standard of care in having policies and procedures in place that were thorough, comprehensive, contemporaneous and in compliance with national standards and with The Joint Commission, the hospital's accrediting body. Compliance is further reinforced by the documented employee orientation and the continuing education of the hospital's staff.

Based upon deposition and document review, the hospital clearly made a reasonable and appropriate effort and delivered interpreter services promptly when requested. The plaintiffs and some of the witnesses deposed in support of plaintiff's claim desired an interpreter availability 24-7, or something less than 24-7, but still available any time a physician would be present; which could be anytime 24-7. That is not reasonable or appropriate for non-decision making family members. There may be times, at the discretion of the hospital caregivers that it may be appropriate for 24-7 interpreter service to be made available for a specific patient need. This was certainly not the case for Shaun Durand, who did not need interpreter services, or his sister who served as his healthcare decision maker representative. They are not deaf and they had no need of interpreter services from the hospital to make medical decisions. It is clear that Roger Durand and Linda Durand were not medical decision makers for the patient, Shaun Durand.

The patient care information shared with Shaun's parents during the patient care conference was allowed and permitted under the Federal Law, Health Insurance Portability and Accountability Act (HIPPA), with patient privacy restrictions preserving the confidentiality of the patients' medical information. HIPPA does not allow health care providers to freely share patient information with anyone other than the patient and the patient's healthcare representative. This means that Shaun Durand's relatives, including parents and siblings, friends, visitors, or anyone else would not receive patient information unless specifically authorized by Shaun Durand or his healthcare representative, Priscilla Durand.

The national standard is consistent with The Joint Commission's standard as published in the 2013 Hospital Accreditation Standards Manual (RI 01.01.03). Fairview Health System and Fairview Ridges Hospital have been found to meet these accreditation standards in 2013, as well as the period before 2013 and subsequent to 2013. The Joint Commission Standards and Accreditation "meet or exceed" the federal government's conditions of participation for hospitals for the Medicare program (TJC 2013 Hospital Standards Manual AXA-1). The standards clearly focus on the patient care needs of the hospital patient, acknowledging that need for interpretation services is tied to medical decision making, patient informed consent, patient understanding and patient decision making along with healthcare professionals. This is also extended in The Joint Commission Standards (RI 01.02.01) language to a patient's representative or healthcare representative who has the responsibility to make patient care decisions. There is not the same importance nor necessity for non-decision maker family members, visitors or public to be provided the same level of response and availability of interpreter services.

These opinions are all within a reasonable degree of hospital administration certainty. I reserve the right to amend or modify this report and my opinions if additional information, documents, or other materials are received and reviewed.

Thank you.

Respectfully submitted,

John C. McGinty, Jr., FACHE

Attachments:
    Resume
    Fee Schedule
    4-Year Testimony History
    2013 TJC Hospital Standards Manual - copies

## Introduction to Standard RI.01.01.03

Because communication is a cornerstone of patient safety and quality care, every patient has the right to receive information in a manner he or she understands. Effective communication allows patients to participate more fully in their care. When a patient understands what is being said about his or her care, treatment, and services, that patient

**ATTACHMENT 21 - EXHIBIT A**

is more likely to fulfill critical health care responsibilities. Communicating effectively with patients is also critical to the informed consent process and helps practitioners and hospitals give the best possible care. For communication to be effective, the information provided must be complete, accurate, timely, unambiguous, and understood by the patient.

Many patients of varying circumstances require alternative communication methods: patients who speak and/or read languages other than English; patients who have limited literacy in any language; patients who have visual or hearing impairments; patients on ventilators; patients with cognitive impairments; and children. The hospital has many options available to assist in communication with these individuals, such as interpreters, translated written materials, pen and paper, communication boards, and speech therapy. It is up to the hospital to determine which method is the best for each patient.

There are laws, regulations, and a body of literature that are relevant to the use of interpreters. These include Title VI of the Civil Rights Act, 1964; Executive Order 13166; policy guidance from the Office of Civil Rights regarding compliance with Title VI, 2004; Title III of the Americans with Disabilities Act, 1990; state laws (many states have laws and regulations that require the provision of language assistance); and the American Medical Association Office Guide to Limited English Proficiency (LEP) Patient Care. Hospitals may wish to reference these sources for additional information on providing interpreting and translation services to their patients.

## Standard RI.01.01.03

The hospital respects the patient's right to receive information in a manner he or she understands.

### Elements of Performance for RI.01.01.03

**C** 1. The hospital provides information in a manner tailored to the patient's age, language, and ability to understand. (*See also* PC.02.01.21, EP 2; PC.04.01.05, EP 8; RI.01.01.01, EPs 2 and 5) Ⓜ Ⓐ Ⓡ

**C** 2. The hospital provides language interpreting and translation services. (*See also* HR.01.02.01, EP 1; PC.02.01.21, EP 2; RI.01.01.01, EPs 2 and 5) Ⓜ Ⓐ Ⓡ

   *Note: Language interpreting options may include hospital-employed language interpreters, contract interpreting services, or trained bilingual staff. These options may be provided in person or via telephone or video. The hospital determines which translated documents and languages are needed based on its patient population.*

C 3. The hospital provides information to the patient who has vision, speech, hearing, or cognitive impairments in a manner that meets the patient's needs. (*See also* PC.02.01.21, EP 2; RI.01.01.01, EPs 2 and 5) Ⓜ Ⓐ Ⓡ

# Appendix A: Medicare Requirements for Hospitals (AXA)

Hospitals seeking to obtain or maintain Medicare certification must meet all requirements for participation in the Medicare program. The standards and elements of performance (EPs) in this manual meet or exceed the Conditions of Participation for hospitals. For a complete list of all regulations that may apply, *see* Code of Federal Regulations, Title 42 at http://ecfr.gpoaccess.gov/.

The following Conditions of Participation are covered in Joint Commission standards and EPs. However, your hospital should be familiar with specific Medicare language in order to make certain that compliance with the entire Medicare requirement can be demonstrated.

## 482.12 Condition of Participation: Governing Body

**482.12(a) Standard: Medical Staff.** The governing body must:

> **482.12(a)(8)** Ensure that, when telemedicine services are furnished to the hospital's patients through an agreement with a distant-site hospital, the agreement is written and that it specifies that it is the responsibility of the governing body of the distant-site hospital to meet the requirements in paragraphs (a)(1) through (a)(7) of this section with regard to the distant site hospital's physicians and practitioners providing telemedicine services. The governing body of the hospital whose patients are receiving the telemedicine services may, in accordance with §482.22(a)(3) of this part, grant privileges based on its medical staff recommendations that rely on information provided by the distant-site hospital.

> **482.12(a)(9)** Ensure that when telemedicine services are furnished to the hospital's patients through an agreement with a distant-site telemedicine entity, the written agreement specifies that the distant-site telemedicine entity is a contractor of services to the hospital and as such, in accordance with §482.12(e), furnishes the contracted services in a manner that permits the hospital to comply with all

## Standard RI.01.02.01

The hospital respects the patient's right to participate in decisions about his or her care, treatment, and services.

**Note:** *For hospitals that use Joint Commission accreditation for deemed status purposes: This right is not to be construed as a mechanism to demand the provision of treatment or services deemed medically unnecessary or inappropriate.*

### Elements of Performance for RI.01.02.01

**A 1.** The hospital involves the patient in making decisions about his or her care, treatment, and services, including the right to have his or her own physician promptly notified of his or her admission to the hospital. △ R

**A 2.** Ⓓ The hospital provides the patient with written information about the right to refuse care, treatment, and services. R

**A 3.** The hospital respects the patient's right to refuse care, treatment, and services, in accordance with law and regulation. △ R

**A 6.** When a patient is unable to make decisions about his or her care, treatment, and services, the hospital involves a surrogate decision-maker in making these decisions. (*See also* RI.01.03.01, EP 6) △ R

**A 7.** When a surrogate decision-maker is responsible for making care, treatment, and services decisions, the hospital respects the surrogate decision-maker's right to refuse care, treatment, and services on the patient's behalf, in accordance with law and regulation. △ R

**A 8.** The hospital involves the patient's family in care, treatment, and services decisions to the extent permitted by the patient or surrogate decision-maker, in accordance with law and regulation. R

**A 20.** The hospital provides the patient or surrogate decision-maker with the information about the outcomes of care, treatment, and services that the patient needs in order to participate in current and future health care decisions. R